## Duncan *versus* Pennsylvania Railroad Co.

| 94 | 435 |
|---|---|
| 129 | 200 |
| 94 | 435 |
| 173 | 342 |

The Act of 1846, incorporating the Pennsylvania Railroad Company, declares that it shall be lawful for said company to make such lateral roads or branches to such convenient points in either of the counties through which the main line may pass as the president and directors may deem advantageous and suited to promote the convenience of the inhabitants thereof and the interests of said company. The Act of 1857, authorizing the sale of the public works, including the railroad from the town of Columbia to the city of Philadelphia, provided that any company, already incorporated by this Commonwealth that might purchase the said railroad, should possess, hold and use the same under the provisions of their act of incorporation, and any supplements thereto. The Pennsylvania Railroad Company bought said public works in pursuance of said statute. Said company commenced the construction of a branch, or lateral railroad, from its main line in West Philadelphia by means of a bridge across the Schuylkill river and along Filbert street on an elevated railway to Merrick street in Philadelphia. A property owner on the line of Filbert street sought to restrain the construction of the road and applied for an injunction. *Held*, that the injunction was properly refused.

May 14th 1880. Before Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ. Sharswood, C. J., and Green, J., absent.

Appeal from the Court of Common Pleas No. 2, of *Philadelphia county:* Of January Term 1880, No. 118. Certified from the Eastern District.

Bill in equity filed by George R. Duncan against the Pennsylvania Railroad Company, to restrain the defendant from building a bridge across the Schuylkill river, and extending their road by means of an elevated railway along Filbert street to Merrick street, in the city of Philadelphia.

The bill averred that the plaintiff was seised in fee of certain premises at the corner of Twenty-third and Filbert streets, and extending to low water-mark in the river Schuylkill; that the defendant proposes to construct a line of railway from the west side of the river Schuylkill to Merrick street, in the city of Philadelphia; that the said line of railroad was to cross the river on a bridge, whose eastern abutment was to be erected on Filbert street, in front of plaintiff's premises, and within the warden's line on the east side of the river; that said railroad was to be constructed eastward along Filbert street on what was known as the elevated railway plan, that is, an elevated frame-work twenty feet above the bed of the street, supported by iron pillars fifty feet apart, which were to be placed along the curb of the street; that said street was a highway, and defendant had no right to change the grade thereof. The bill further alleged that the company had no authority to construct said line; that the road and bridge, if constructed, would injure the property of plaintiff both in his riparian rights and his privileges on Filbert street, and that it would be thereby greatly impaired in value. He therefore prayed that the defendant be restrained from constructing said bridge and road.

The answer admitted the principal facts in the bill, but averred that the elevation of the road was a necessity from the nature of the ground and the purposes for which it was to be used. It denied that any damages capable of legal compensation would be done plaintiff, and set up authority in the company to make the road under its charter: Act of April 13th 1846; under the Act of May 16th 1857, authorizing a sale of the public works, and under the Act of April 18th 1856, and that it had been authorized by ordinance of councils of October 13th 1879, to occupy Filbert street for railroad purposes, and by the board of port wardens to build the bridge.

After argument the court refused the motion for an injunction. HARE, P. J., delivering the following opinion:

"The bill avers that the defendant is a corporation chartered by the Commonwealth of Pennsylvania, with authority to locate and construct a railroad having its eastern terminus at Harrisburg, and extending thence to the county of Allegheny; that the legislature, on the 16th of May 1857, authorized the sale of a railroad belonging to the state, and reaching from the Susquehanna river, at Columbia, to the western end of Market street bridge, in the city of Philadelphia, at which latter point it connected with a railroad which had been built by the city under an authority conferred by various statutes; that the defendant proposes to construct a railroad from a point on its present road on the west side of the river Schuylkill, north of Market street to Fifteenth street, on the east side of the said river, and that the proposed line or route is to cross the Schuylkill by a bridge, and proceed eastward along Filbert street to Shock street, and thence over land purchased by the defendant to the station at Fifteenth street; that the track is to be laid at a height of from thirteen to twenty feet above the existing grade of Filbert street, and used for trains and locomotives, and that the effect will be to impair and depreciate the real estate owned by the complainant. The bill also avers that the corporation defendant has no authority under the Constitution and laws of this Commonwealth to lay out and build such a line of road, and that the erection of a bridge to cross the Schuylkill, and the occupation of a street in the city of Philadelphia for such a purpose, are not only *ultra vires*, but contrary to law and prejudicial to rights which the complainant is entitled to enforce. The defendant's case, so far as it is considered in this opinion, may be briefly stated as follows:

"1. That the 17th section of the act incorporating the Pennsylvania Railroad Company, declares that it shall be lawful for the said company ' to make such lateral railroads or branches leading from the main line of their said railroad, to such convenient place or points in either of the counties into or through which the said main line of the road may pass, as the president and directors may

deem advantageous, and suited to promote the convenience of the inhabitants thereof, and the interests of said company.'

" 2. That the act authorizing the sale of the main line of the public works, including the railroad from Columbia to this city, provided that any company already incorporated by this Commonwealth, that might purchase the said main line, should possess, hold and use the same under the provisions of their act of incorporation and any supplements thereto, and that the defendants subsequently bought in pursuance of this statute.

" 3. An ordinance of the city of Philadelphia, reciting that, whereas the Pennsylvania Railroad Company is about to construct a branch line of railroad to extend from its main line in West Philadelphia to the business portion of the city, and it is necessary that a portion of Filbert street shall be occupied thereby, therefore, the select and common councils of the city of Philadelphia, do ordain that the Pennsylvania Railroad Company be, and it is hereby authorized to occupy the end of Filbert street, with an abutment for a railroad bridge, and use the line of Filbert street, from said abutment, eastward to Shock street, with an iron trestlework for supporting a branch line of railroad : Provided, that the said abutment and trestle-work shall not prevent the use of Filbert street as a public road or highway.

" 4. An act approved June 9th 1874, authorizing the counties, cities and townships of this state to enter into contract with any railroad companies whose roads enter their limits, whereby the said railroad companies may relocate, change or elevate their roads within said limits, in such manner as in the judgment of such authorities may be best adapted to secure the safety of life and property, and promote the interest of said city, county or township, and for that purpose to do all such acts as may be necessary and proper to effectually carry out such contracts.

" It is proper to add, for the better understanding of what follows, that the 10th section of the 17th article of the new Constitution declares that ' no railroad, canal or transportation company * * * shall have the benefit of any future legislation, * * * except on condition of the complete acceptance of all the provisions of this article.'

" Reasoning from these premises, the case may be brought within comparatively narrow limits. The act for the sale of the main line of the public works, provided that any company already incorporated by this Commonwealth that might become a purchaser should ' possess, hold and use the same under the provisions of their act of incorporation ;' and when the Pennsylvania Railroad Company bought on the faith of this statute, it acquired an indefeasible title to every privilege within the scope of the assurance thus held forth.

" The clause of the 17th section of the charter, which confers

[Duncan *v.* Pennsylvania Railroad Co.]

the right of making lateral roads or branches, is therefore as much a part of the grant under which the corporation defendant holds the line which it acquired by purchase, as it is of that by which it was created and authorized to build a railway from Pittsburgh to Harrisburg. This conclusion is the more reasonable, because no sufficient ground has been or can be assigned why the power to construct lateral arms or feeders, and use them as a means for the collection and distribution of passengers and freight, is less necessary and convenient on this side of the Susquehanna, than on the other; or why a privilege, which may confessedly be exercised in Allegheny county, should have been denied in Lancaster, Montgomery or Philadelphia. Such a franchise is no doubt so far severable, that the power to construct a main or trunk railroad may be confided to one party corporate, and that of making the branches to another; but both powers should obviously be lodged in the same hand, from motives of policy and convenience. What, however, we have to determine is not what the legislature should have done, but what they did; and if the power in question, was in our judgment unfit or dangerous, we should not be justified in disregarding the plain language of the contract. Public grants should unquestionably be read in the sense which is the most favorable to the state; but this rule, like its converse, *fortius contra proferentem*, which prevails among individuals, has no place, unless the language is ambiguous or admits of two interpretations. Whether the contract bears the seal of the Commonwealth or of a citizen, the real question is, what did the grantor intend? and if his purpose is plainly written, good faith requires that it should be carried into effect.

"Another point for consideration is, whether the grant of a right to construct a railway authorizes the taking of land that has already been appropriated to a different and inconsistent public use; or, to put the question in the form in which it is presented here, can the Pennsylvania Railroad Company lay a track in a street in this city without an express authority to that effect? If the question were an open one under the decisions of the Supreme Court, we should have little difficulty in arriving at a conclusion, in view of the general principles of jurisprudence and the authorities in other states. Land which has been taken under the right of eminent domain, and confided to a natural or to an artificial person for a public use, may be again taken by virtue of the same right, and appropriated to any purpose in which the community is interested. But such an intention should not be imputed to the legislature, unless it is distinctly expressed, or is a necessary inference from the nature of the grant. Hence, the incorporation of a company with authority to construct a railway from one given point to another, may authorize the crossing or intersection of the intervening highways, but will not justify the location of the rail-

[Duncan v. Pennsylvania Railroad Co.]

way along the line of a public road, or of the streets or avenues of a city. But for this principle, a newly-incorporated company might intrude on the franchise of its predecessor, and occupy so much of the road-bed as suited its convenience, subject to such compensation as might be awarded by a jury. This consideration is of the greater moment, in view of the constitutional provision that, 'any association or corporation organized for the purpose, shall have the right to construct and operate a railroad between any points within this state.' The authority is given broadly, and in terms which preclude legislative restriction, and if a turnpike or public street can be occupied by virtue of the right which it confers, I know of no principle which will protect the tracks of the Pennsylvania Railroad Company against a similar interference. We are not, however, free to be guided by our own judgment, because we are bound by the authorities in the court above, which indicate that the corporation defendant is empowered to occupy the streets and highways of every county through which it passes. The point has arisen in various instances, and has always been determined the same way; and if each one of these decisions may be explained or qualified when considered separately, they yet as a whole present an unbroken front. The power to enjoin is one that should not be exercised except to prevent some act which is clearly contrary to law; and in a doubtful case, a chancellor should stay his hand. There is the more reason for caution in the present instance, because an appeal may be at once had from our decision to the Supreme Court, which can much better than a subordinate tribunal define the law and ascertain the exact measure of the right in dispute.

"There is another consideration which has largely influenced our judgment. The Pennsylvania Railroad Company cannot be said to come as a trespasser; the gates were thrown open to it by the body which is presumably most competent to speak for the citizens. The ordinance above cited, distinctly sanctions what the defendant proposes to do, and all that the complainant would have us forbid. Aside from a doubtful ground that will be presently stated, this ordinance and the Act of June 9th 1874, are decisive of the controversy. Conceding that the defendant has no direct authority from the legislature to occupy Filbert street, it may still rely on the grant made by councils, which is clearly a contract within the broad and comprehensive language of the statute. It may be said that the city did not receive value for this agreement, but a consideration is not requisite for the support of contracts of record, made by statute or ordinance, or under seal; and, moreover, the undertaking of the railway company 'to keep the said railroad and structures in good repair,' and 'save the city of Philadelphia harmless,' is a valuable, if inadequate, consideration. Singular as it may seem, this important statute was not referred to in the able

[Duncan *v.* Pennsylvania Railroad Co.]

and otherwise exhaustive arguments made on either side. It was ignored by the railroad company, which disdains municipal concessions, and claims a paramount right to use the streets of the city, and the complainant's counsel did not think it worth their while to refute an argument which their opponents had not made. Such might well be the duty of counsel; but it was obviously incumbent on the court to ascertain the true meaning of an act which bore directly on the matter in dispute, before proceeding to judgment. Councils have no right to dispose of the streets of the city independently of the statute; and if it is not applicable, they much exceeded their authority in making such a grant. It is not less plain that if Filbert street can be occupied without the consent of the city, other thoroughfares may be obstructed in the same way. A re-argument was consequently directed on this point, when it was forcibly contended by the complainant's counsel that the corporation defendant could not claim or exercise any right under the ordinance, because it had not accepted the provisions of the 17th article of the Constitution, in the manner required by an act approved June 5th 1874, which provides that such acceptance shall be signified by filing.' in the office of the secretary of the Commonwealth, a certificate in writing signed by the president and secretary, and attested by the corporate seal of the company, stating * * * that all the provisions of said article' have been accepted at a regular or special meeting of the board of directors, with the consent of the stockholders.

"The counsel for the Pennsylvania Railroad Company tacitly conceded that this position was well taken, by omitting to notice it in their reply, and, basing their client's right exclusively on the power conferred by the charter, which, as they insisted, authorized the Pennsylvania Railroad Company to lay a track, and run locomotives in any highway in this county which the board of directors should think fit to use for such a purpose. It does not often happen that the counsel on opposite sides agree, and when they do, it is not always safe to differ from them; but the case is of one so much importance to the city and Commonwealth, as well as to the parties, that we may be permitted to say, that while recognising the complexity of the question, we are not convinced. What the legislature is precluded from doing directly, it may not do indirectly through the instrumentality of a municipal corporation; as, for instance, by authorizing the city of Philadelphia to create canal or railway companies, or enlarge the powers of those already chartered; but it does not follow that a city may not since, as well as before the adoption of the new Constitution, be empowered to enter into agreements with railway and transportation companies, for the purpose of facilitating or regulating any work which they are authorized to perform within the city limits, or that will be conducive to the interests of the inhabitants, although the effect should

[Duncan *v.* Pennsylvania Railroad Co.]

be to enable the company to occupy a street that could not otherwise be diverted from the general use. The primary object of such legislation is to promote the welfare of the city; and the intent should not be frustrated, or the municipality denied the right to proceed in accordance with the grant, because the power which it confers cannot be exercised without incidentally benefiting a company that has not accepted the provisions of the seventeenth article of the Constitution. When, therefore, as in the case in hand, the company, though not authorized to take, is entitled, under its charter, to receive and use, and the obstacle is the city's want of power to convey, an act enabling the city is not, as I suppose, a 'benefit' to the company from 'subsequent legislation' within the meaning of the seventeenth article of the Constitution.

"There is another aspect of the question. The words of the Constitution are, that 'no railroad, canal or other transportation company * * * shall have the benefit of any future legislation * * * except on condition of the complete acceptance of all the provisions of this article.' This language is ambiguous, and may be understood as meaning that acceptance is a condition precedent, or that the use and enjoyment of a privilege conferred by a subsequent statute shall operate as an acceptance. The latter interpretation seems to us to be best calculated to effect the object, which was not to hinder future legislation, or prevent it from having full and immediate effect, but to bring corporations which had been chartered prior to the Constitution within its fold. The Constitution, as Mr. Webster well observed, is as much a part of every statute as if it were recited in the preamble; and when a corporation accepts the benefit of a subsequent statute, it necessarily assents to the express or implied conditions of the grant. If this view is correct, the Act of June 5th 1874, must be regarded as directory, and the legislature could not, by prescribing a particular mode of acceptance, prevent any other from having its appropriate effect. On the assumption, therefore, that the license given by the ordinance is such a benefit as the framers of the new constitution contemplated, the corporation defendant will be as much bound under the seventeenth article, by proceeding to extend its road in the manner indicated by councils, as if it had declared its assent formally in writing, and filed the instrument in the proper office.

"We have not determined that the prayer for an injunction must be refused, without some misgivings as to the possible consequences of a conclusion that seems to be an unavoidable inference from the premises, and the decisions of the court above. A citizen of Philadelphia, or, I might add, of any part of the Commonwealth, should not readily assent to the claim advanced by the defendant's counsel. It is that the corporation defendant has a dominion over the highways of Philadelphia, and, indeed, of every county through

[Duncan *v.* Pennsylvania Railroad Co.]

which its roadway passes, that cannot be controlled by the courts, the legislature, or even by the people assembled in convention, short of an amendment to the Constitution of the United States. The case is still more grave, if, as we are told, the power may be used⅃in a way to hinder or prevent ordinary traffic, and that will be detrimental to the owners and occupants of the adjacent buildings, without a liability in damages for the resulting loss. Rails may, it is alleged, be laid at grade, and locomotives run down Chestnut or Market street, or an elevated railway constructed on a level with the bed-chambers on either side of the street. The board of directors are the sole judges of the necessity for the exercise of the power, and their determination cannot be reconsidered elsewhere. If, as we are inclined to believe, the sanction of the municipality is essential to the execution of such a project, there may be less danger of abuse, but this alone will not satisfy the requirements of justice, which are that every one who is injured by such a change shall be indemnified for his loss. Compensation could not be recovered at common law for the appropriation of land or chattels to a public use, not because the right was doubtful or denied, but because the law as it stood then did not provide a remedy by suit. There was no contract expressed or implied, and an act done by virtue of the sovereign power of the state could not be treated as a tort. The danger in England was theoretical, because Parliament, though free to withhold if it thought proper, was careful of vested rights, and gave an ample equivalent when property was taken for public use. When our system of government came to be organized, it was instinctively perceived that so much latitude could not safely be accorded here. An amendment to the Constitution of the United States accordingly provided that property should not be taken for public use without compensation, and like restrictions were imposed by the constitutions of the several states. This provision was rigidly construed in this Commonwealth as meaning simply what its letters said. Property taken for public use must be paid for, but no compensation was due for property injured or destroyed. A house might be rendered uninhabitable, or the means of access to it cut off by a change of grade, or an embankment, or it might be consumed by a fire kindled by the sparks issuing from the funnel of a locomotive, and the owner have no legal means of redress. This injustice was remedied by the Constitution of 1874, which provides that "municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction." Our first care at the argument for the injunction, was to ask whether this requirement had been fulfilled;

[Duncan *v.* Pennsylvania Railroad Co.]

but it appeared that counsel on both sides agreed in holding that it did not apply. Two reasons were assigned : one that the bill did not demand compensation, or complain that it was unduly withheld; the other, that the Pennsylvania Railroad Company having been chartered long before the adoption of the Constitution, the state could not legally impose any liability that did not exist when it was incorporated. As the former objection might be obviated by an amendment, we think it proper to say that we are not satisfied of the validity of the latter. The Constitution of the United States undoubtedly precludes a state from impairing the obligation of a charter even through an amendment of its organic law ; but this restriction has never been held to forbid such remedial legislation as may be requisite to give effect to antecedent rights, or provide a remedy for injuries that previously went unredressed. A child was entitled to support from his father at common law, but he could not recover damages for the frustration of this right through the parent's death from injuries occasioned by the negligence of an individual or a body corporate. The act which now affords a remedy for such deprivations, and under which damages are constantly assessed and judgments rendered, is of recent origin, and was passed since the creation of the Pennsylvania Railroad Company, and yet it has never, that I am aware of, been contended that it was invalid as to pre-existing corporations or impaired their chartered privileges. In like manner the citizen has a natural right to compensation, for the consequences of acts done for the public benefit that are injurious to his estate or person, and a statute which affords a remedy cannot justly be assailed as unconstitutional. Such an argument would obviously be fallacious if advanced on behalf of an individual, and the principle is the same when the defendant is a corporation. A power conferred by a charter cannot be abrogated without impairing the obligation of the contract ; but the legislature does not, in making such a grant, contract that persons who are injuriously affected by the exercise of the power are not entitled to indemnity, nor that it will not provide a means for rendering their demand effectual. This may be tested by supposing the incorporation of a railway company in a state where, as was long the case in Rhode Island, there is no constitutional restraint on the right of eminent domain, and the subsequent enactment of a law providing that land should not be taken for the use of the road without payment. Would any one contend that such a statute impaired vested rights, or was within the prohibition of the Constitution of the United States ? If the question must be answered in the negative, the legislature might obviously proceed to give a remedy for property injured or destroyed.

" In dismissing the motion for an injunction, we, therefore, have the satisfaction of believing that the complainant may recover compensation in damages for any injury that he may sustain from the

[Duncan *v.* Pennsylvania Railroad Co.]

proposed extension of the Pennsylvania Railroad. The motion for an injunction is refused."

MITCHELL, A. L. J., filed the following concurring opinion:

"As this case involves interests of very great magnitude, and may become a precedent of importance with regard to future litigation, I think it proper to indicate my individual views, though I shall do so briefly and without argument.

"I am unable to assent to the conclusion that by the purchase of the line of completed railroad from the state, the Pennsylvania Railroad Company acquired the separate and severable franchise of building branch roads in connection with that line between Harrisburg and Philadelphia. I am, therefore, of opinion that the defendant has no privilege or authority under the Act of 1857, or any other law that has been shown to us, to build branch roads in the county of Philadelphia.

"I am further of opinion that even if the power to build branch roads did exist, it would not authorize the use of a public street for that purpose. There is neither the express grant nor the necessary implication which is required to authorize the taking of property already dedicated to public use for another use, though it be also public.

"Under the general rules of law, the city of Philadelphia could not, by its permission, give the railroad company any authority not contained in its charter, nor could it dispose of the streets, which are not its property, but highways of the Commonwealth, without express legislative sanction; and the ordinance relied upon by the defendant would be, therefore, insufficient as a defence to this bill. Were we, therefore, to rest upon the grounds set up by defendant's answer, I should be of opinion that they were wholly inadequate, and that the injunction ought to be granted. Under the Act of 9th June 1874, however, referred to by the president judge, the authorities of the city are authorized and empowered to enter into contracts with railroads within its limits, whereby the said railroads may relocate and change their roads in such manner as the city authorities may deem best for the interests of the city, &c. A fair construction of this act would seem to give the city councils the right to enter into a contract with the defendant railroad by which the latter might relocate its point of crossing the Schuylkill river, and the terminus at which its rails should stop. By force of this act, the ordinance of October 13th 1879, is a valid authority to the defendant to make the proposed change in its route, and I concur in the judgment of the court refusing an injunction, upon this ground alone."

The plaintiff took this appeal, and alleged that the court erred in refusing the motion for an injunction. The appeal was certified

[Duncan v. Pennsylvania Railroad Co.]

to the Middle District under the provisions of the Act of June 12th 1879, Pamph. L. 1879, p. 177. (See next case.)

*M. Hampton Todd* and *David W. Sellers,* for appellant.—The plaintiff sustains damages consequential to his ownership and his riparian right. Under the latter, he is entitled to have the water in front of Filbert street untouched. The city, not being a riparian owner, cannot build a wharf, nor can the wardens give permission for the defendants to build beyond their line: Cramp's Appeal, 36 Leg. Int. 284; Wardens *v.* City, 6 Wright 209. Damages are only for taking land or materials. No consequential damages are chargeable to defendants as to land: Navigation Co. *v.* Coon, 6 Barr 379. Nor as to riparian rights: Bridge Co. *v.* Kirk, 10 Wright 112.

If the plaintiff has a right to compensation for the injury to his property and the destruction of his dock, then no method exists which, in a legal sense, would adequately and easily afford him compensation, and defendants will be enjoined until it is provided: Bonaparte *v.* Railroad Co., Baldwin 205; Pittsburgh *v.* Scott, 1 Barr 315; Railroad Co. *v.* Congregation, 3 P. F. Smith 445. There is no common-law right: Struthers *v.* Railway Co., 6 Norris 282; Railroad Co. *v.* Speer, 6 P. F. Smith 334; Bridge Co. *v.* Bridge Co., 7 N. H. 35; Gulf R. R. Co. *v.* Shiels, 33 Geo. 609.

There can be no claim for damages, because there is no actual "taking" in this case: Henry *v.* Bridge Co., 8 W. & S. 85. The damages are consequential. Under art. xvi., sect. 8 of the Constitution, the plaintiff would be entitled to compensation, but the rights of the company were fixed at the time of its adoption, and it has not been accepted by them. The plaintiff is, however, bound by it and entitled to its protection: Mott *v.* Railroad Co., 6 Casey 9; Navigation Co. *v.* Coon, 6 Barr 379; Buckwalter *v.* Bridge Co., 2 Wright 281; Struthers *v.* Railroad Co., *supra.*

The plaintiff has a standing in court to compel the defendants to show their authority, by reason of his ownership upon the line of the street: Faust *v.* Railway Co., 3 Phila. R. 164; Act of June 19th 1871, Pamph. L. 1361; Lejee *v.* Railroad Co. 10 Phila. R. 362; Edgewood Railroad Co.'s Appeal, 29 P. F. Smith 257. This authority can be claimed by the defendants only upon the theory that the proposed road is a branch or an extension. The power to build a branch in Philadelphia has never been given them. Under the charter of 1846, Pamph. L. 312, sect. 11, they were authorized to construct a road from Harrisburg to Pittsburgh, and (sect. 17) branches to any point in either of the counties into or through which the main line might pass. The Act of 1857, Pamph. L. 519, providing for the sale of the Philadelphia and Columbia Railroad, granted only a single franchise, and the Pennsylvania Railroad Company were equal bidders with all others:

[Duncan *v.* Pennsylvania Railroad Co.]

Mott *v.* Railroad Co., 6 Casey 9. They purchased a completed line, from which they certainly were given no express right to build branches, such as they had with respect to the original line, west from Harrisburg; nor even an implied right, because that can, in no sense, be considered necessary to the possession and use of a line which is in a finished condition. A corporation takes nothing by implication, except where the implied power is indispensable to the exercise of an express power. Where there is a doubt it must be resolved in favor of the public, who are the grantors: Black *v.* Canal Co., 9 C. E. Green 476; Stevens *v.* Railroad Co., 5 Vroom 537; Commonwealth *v.* Railroad Co., 3 Casey 339.

Nor have the defendants a right to build an extension. The Sale Act gave such a power, but it was exhausted when the line to the Navy Yard, by way of Christian street, was finished, and that line has been expressly recognised by them (Annual Reports 1862 and 1863) as constituting the extension intended by the act. Even if this were not so, the proposed road, which is to stop at Fifteenth street, would not fulfil the requirements of the law, for that speaks of the Delaware river as the *terminus ad quem.* When there is such a grant of power, the law will not permit the grantee to construct a part only, and then stop: Stewart's Appeal, 6 P. F. Smith 413; Cohen *v.* Williamson, 1 Macn. & G. 481; Logan *v.* Earl Courtown, 13 Beav. 22; People *v.* Vermont Railroad Co., 24 N. Y. 267; Commonwealth *v.* Railroad Co., 3 Casey 339; Martin *v.* Railway Co., 3 Phila. 316.

The defendants have no right to construct any other than a surface railroad: Charter of 1846, sects. 11, 12, 13, 17; General Railroad Law of 1849; Act of 1868, Pamph. L. 62, sect. 9.

The bed of a street cannot be occupied longitudinally by a railway without express legislative authority: Commonwealth *v.* Railroad Co., 3 Casey 339; Dillon on Corp. 560; Springfield *v.* Railroad Co., 4 Cushing 63; Boston and Albany Railroad Co.'s Case, 53 N. Y. 574; Cake *v.* Railroad Co., 6 Norris 307; Cemetery Co. *v.* New Haven, 43 Conn. 234; Bridge Co. *v.* Bridge Co., 7 N. H. 35; Gulf Railroad Co. *v.* Shiels, 33 Georgia 609. A crossing or intersection of a public street is implied to reach the terminus; but an alignment concurrent with a public road or street must be the result of express grant.

The city ordinance has no effect on the plaintiff's rights: Attorney-General *v.* Railway Co., 1 W. N. C. 489.

*Wayne MacVeagh* and *John Scott*, for appellee.—The sole question here is, whether the Pennsylvania Railroad Company has authority to build its proposed line of railroad from a point on its main line in West Philadelphia to Fifteenth and Filbert streets. The charter of 1846, Pamph. L. 312, sect. 11, provides that " the

president and directors of said company shall have power and authority by themselves, their engineers, superintendents, agents, artisans and workmen, to survey, ascertain, locate, fix, mark and determine such route for a railroad as they may deem expedient:" sect. 17. "And it shall be lawful for the said company, in the manner and subject to the conditions and provisions hereinbefore provided, in relation to the main line of their railroad, by this act authorized to be made, to make such lateral railroads or branches, leading from the main line of their said railroad, to such convenient place or points in either of the counties into or through which the said main line of their road may pass, as the president and directors may deem advantageous and suited to promote the convenience of the inhabitants thereof and the interests of said company."

This was applicable only to the main line between Harrisburg and Pittsburgh; but, by the Sale Act 1857, Pamph. L. 519, sect. 11, "Any company already incorporated by this Commonwealth, becoming the purchaser of the said main line, shall possess, hold and use the same under the provisions of their act of incorporation and any supplements thereto: modified, however, so as to embrace all the privileges, restrictions and conditions granted by this act in addition thereto."

The line of the Columbia Railroad having been purchased by the Pennsylvania Railroad Company, the branching power theretofore possessed by them as to the original line was, by this act, extended to the road purchased.

The right to build such a portion of a railroad as is now proposed, was brought into direct question before the Supreme Court, and decided in favor of the company: Pittsburgh v. Railroad Co., 12 Wright 355. There the city was opposed to the new road; here it is not.

The Sale Act 1857, Pamph. L. 519, sect. 3, provides that " it shall be lawful for the purchasers * * * to straighten and improve the said the Philadelphia and Columbia Railroad, and to extend the same to the Delaware river in the city of Philadelphia." The line of railroad which it is proposed to build, being from a point near the eastern terminus of the Columbia Railroad to the Delaware river, it is difficult to understand how the legislature could confer the right claimed by the defendants by more suitable language than that which has been quoted. The plaintiff contends that this power has been exhausted, but evidently through some confusion or misunderstanding of dates of legislation. Before the Sale Act, the Pennsylvania Railroad Company was empowered (1852, Pamph. L. 394,) to acquire real estate in West Philadelphia for depot purposes; and in 1856 (Pamph. L. 447) was authorized to construct a railroad from a point on the Philadelphia and Columbia Railroad, near the repair shops of the Pennsylvania Railroad in West Philadelphia, to a point on the west side of the Schuylkill near Gray's

[Duncan *v.* Pennsylvania Railroad Co.]

Ferry, crossing the Schuylkill to the Delaware river below the Navy Yard; and, by the 4th section of the latter act, to connect the said railroad with any railroads now or hereafter constructed within the limits of the city of Philadelphia, upon the route of said road so extended, on such terms and for such time and under such restrictions as may be agreed upon by the officers and directors of said companies." This act was accepted by the Pennsylvania Railroad Company on the 6th of April 1857, more than a month before the Act of Sale. It is not easy to understand how the exercise of franchises granted to and exercised by the stockholders of the Pennsylvania Railroad Company previous to the passage of the act authorizing the sale of the main line of the public works, can be supposed to have exhausted a subsequent and distinct authority expressly conferred upon the company as the purchaser of the main line.

If the company possesses the right to build its road from West Philadelphia to Fifteenth and Filbert streets on a line to the Delaware river, it can occupy that portion of Filbert street mentioned in the plaintiff's bill: Rex *v.* Pease, 4 B. & Ad. 30; Turnpike Co. *v.* Railroad Co., 23 Pick. 328; Philadelphia *v.* Trenton Railroad Co., 6 Whart. 258. Expressly decided in Commonwealth *v.* Railroad Co., 3 Casey 339; Railroad Co. *v.* Commonwealth, 23 P. F. Smith 29; Green *v.* Reading, 9 Watts 382; Henry *v.* Railroad Co., 8 W. & S. 85; Mercer *v.* Railroad Co., 12 Casey 99.

To the Commonwealth belongs the franchise of every highway within its limits as a trustee for the public. Every public road therein exists by force only of the Commonwealth's authority. As she then authorized the defendant to appropriate so much of the public road as was necessary for its purposes, and the portion taken did not exceed the width fixed by law, it follows that the taking in pursuance of law cannot be a public nuisance; Fletcher *v.* Railroad Co., 25 Wend. 463; Drake *v.* Railroad Co., 7 Barb. 508; Harris *v.* Thompson, 9 Id. 350. The taking of a street or highway for the purposes of a railroad is taking it for a public use: People *v.* Law, 34 Barb. 502. A structure authorized by the legislature cannot be a public nuisance. A public nuisance must be occasioned by acts done in violation of law. A work which is authorized by law cannot be a nuisance: Rex *v.* Pease, 4 B. & Ad. 30; Commonwealth ex rel. *v.* Railroad Co., Pitts. Leg. Jour., January 2d 1858.

Here we have the approval of the city, while in Pitts. *v.* Railroad Co., *supra*, the right was affirmed, though the city opposed.

The judgment of the Supreme Court was entered May 24th 1880,

PER CURIAM.—Decree refusing preliminary injunction affirmed, and appeal dismissed at the costs of the appellant.