| 129 | 181 |
| 222 | ²598 |

# PENNSYLVANIA R. CO. v. G. R. DUNCAN'S ADMR.

ERROR TO REVIEW THE JUDGMENT OF THE SUPREME
COURT OF PENNSYLVANIA.*

Argued October 24, 1889—Decided November 11, 1889.

1. Exemption of railroad corporations from the operation of future general enactments, either constitutional or legislative, cannot exist unless given expressly or by an implication equally clear with express language; wherefore, the mere fact that the charter of a company imposes upon it no liability for consequential injuries, arising from the construction or enlargement of its works, does not give rise to a contract that it shall always be exempt from such liability.

2. The Pennsylvania Railroad Company, incorporated by the act of April 13, 1846, P. L. 312, is subject to the provisions of § 8, article XVI. of the constitution of Pennsylvania of 1874, and is liable thereunder to make compensation for property injured or destroyed by the construction or enlargement of its works or improvements in the subsequent exercise of the right of eminent domain, although there be no physical taking of such property or any portion thereof.

3. This liability exists as to the elevated roadway constructed in 1881 by the said railroad company upon Filbert street, Philadelphia, as a branch of the Philadelphia & Columbia railroad, purchased by said company on the sale under the provisions of the act of May 16, 1857, P. L. 519, notwithstanding that by the terms of the purchase this road was to be held by the company under its original charter, which, as then interpreted by the courts of the state, imposed no such liability.

No. 36 October Term 1889, Sup. Court of U. S.; Sup. Ct. of Penna., No. 109 July Term 1884.

The Supreme Court of Pennsylvania having affirmed a judgment rendered for the plaintiff by the Court of Common Pleas No. 2 of Philadelphia county, in an action brought by George R. Duncan against the Pennsylvania Railroad Company, reported Penna. R. Co. v. Duncan, 111 Pa. 352, the defendant company, on February 20, 1886, filed its petition, praying for a re-argument, which on March 22, 1886, was refused. Thereupon the defendant took this writ from the Supreme Court of

---

* Reported here by request.

Statement of Facts.

the United States,* specifying that the Supreme Court of Pennsylvania erred:

1. In deciding that, notwithstanding the Pennsylvania Railroad Company was entitled by the terms of its charter, granted in 1846, to exercise thereafter the right of eminent domain at the price of paying only for property actually taken, and was not required to pay for property injured but not taken, yet the price of the exercise of such franchise could be and was increased by the provisions of the constitution of Pennslyvania, adopted in 1874, so that thereafter the said company should pay not only for property taken, but also for property injured but not taken.

2. In its construction of the act of the general assembly of Pennsylvania, passed May 16, 1857, for the sale of the main line of the public works, and the deed of the commonwealth to the Pennsylvania Railroad Company of July 31, 1857, in pursuance of the provisions of the said act, in that by its said construction it permits the state to impair the obligation of the contract entered into between the said state and the said company by the said deed of July 31st aforesaid, executed by the authority and according to the terms of the said act of assembly passed May 16, 1857.

3. In holding that the acceptance by the Pennsylvania Railroad Company of the act of the general assembly of Pennsylvania, passed April 4, 1868, made it subject to the provisions

---

* As noting the practice observed: The decision of the Supreme Court of this state was rendered February 15, 1886. On February 17th, the record was remitted to the Court of Common Pleas No. 2. On February 20th, the petition for a re-argument was filed, which was refused on March 22d. On March 25th, the petition of the railroad company was presented to Mr. Chief Justice MERCUR " for the allowance of a writ of error to the Court of Common Pleas No. 2 of Philadelphia county, state of Pennsylvania, where the record lies, in order that the judgment of the said court may be re-examined and reversed or modified in the Supreme Court of the United States." On the same day the prayer of the petition was allowed by the Chief Justice, when a writ of error was issued by the clerk of the Circuit Court of the United States for the Eastern District, as from the Supreme Court of the United States, directed to the Court of Common Pleas No. 2 of Philadelphia county. A citation was then awarded by Mr. Chief Justice MERCUR, issued and served upon George R. Duncan, admonishing him to appear before the Supreme Court of the United States, pursuant to said writ of error.

of the act of May 3, 1855, and the constitutional amendment of 1857, and, as a consequence, to the general legislative power of the general assembly. The effect of the said decision of the said court is that it permits the state to impair the obligation of both the previous contracts entered into between the state and the said company, to wit, one by the grant of the charter of the company, approved April 13, 1846, and the other by the deed of July 31, 1857, executed by the authority and according to the terms of the act of May 16, 1857.

4. In not reversing the judgment of the Court of Common Pleas No. 2 of Philadelphia county, for its refusal to affirm the second point submitted at the trial of the cause in the said court:

(2) "The defendant, under its charter and supplements in evidence, had full and lawful authority to erect and operate the said Filbert street extension or branch, and in doing so had the right to occupy Filbert street longitudinally, without incurring any liability by reason thereof to the plaintiff as the owner of property abutting on said street."

5. In not reversing the judgment of the Court of Common Pleas No. 2 of Philadelphia county, for its refusal to affirm the third point of the defendant submitted at the trial of the cause in the said court:

(3) "The defendant, as purchaser of the main line of the public works of this state, under the act of assembly and deed in evidence, had full lawful authority to erect and operate the said Filbert street extension or branch, and in doing so had the right to occupy Filbert street longitudinally, without incurring any liability by reason thereof to the plaintiff as owner of property abutting on said street."

6. In not reversing the judgment of the Court of Common Pleas No. 2 of Philadelphia county, for its refusal to affirm the fifth point of the defendant submitted at the trial of the cause in the said court:

(5) "Under all the evidence in this case the verdict must be for the defendant."

George R. Duncan, the plaintiff in the original action, having died after the taking of this writ, P. H. Miller, his administrator, was substituted upon the record as defendant in error.

*Mr. Wayne MacVeagh* (with him *Mr. A. H. Wintersteen*), for the plaintiff in error:

1. The single question before this court is whether the state of Pennsylvania, in imposing, through its courts, upon the Pennsylvania railroad company the liability for consequential damages provided by the state constitution of 1874, violated the provisions of article I., § 10, of the constitution of the United States, by impairing the obligations of a previous contract contained in the charter of the railroad company and in the terms of an executed grant or sale of property and franchises, made to it by the state in 1857. That charters of private corporations and all executed grants are contracts, the obligations of which no state may impair, has become, in accordance with the doctrines laid down in Fletcher v. Peck, 6 Cranch 87, and the Dartmouth College Case, 4 Wheat. 518, axiomatic law : Binghamton Bridge Case, 3 Wall. 51.·

2. A provision in a state constitution may be a law impairing the obligation of a contract: Fisk v. Jefferson Police Jury, 116 U. S. 131; Pacific R. Co. v. Maguire, 20 Wall. 36 ; Davis v. Gray, 16 Wall. 203; Railroad Co. v. McClure, 10 Wall. 511. The Supreme Court of Pennsylvania having practically held that the contract of the state with the railroad company did not confer upon the latter immunity from the imposition of consequential damages by constitutional amendment, the jurisdiction of this court is apparent under the principles laid down in N. O. Water Works v. La. Sugar Co., 125 U. S. 18 ; and, once assuming this jurisdiction, it follows that the court is not concluded by the view of the questions involved, taken by the state court : Jefferson Br. Bank v. Skelly, 1 Black 436 ; Louisville etc. R. Co. v. Palmer, 109 U. S. 244; Bridge Proprietors v. Hoboken L. etc. Co., 1 Wall. 116.

3. The Pennsylvania constitution of 1874 did not attempt to impose upon corporations previously chartered a liability for consequential damages to property. In §§ 1 and 2 of the Schedule, and in §§ 2 and 10 of article XVI., are expressions showing that the framers intended fidelity to the mandates of Federal law, and did not intend or conceive that the constitution would apply to existing corporations, without their own consent, plainly expressed. The provisions of § 8 of article XVI., therefore, ought not by a narrow construction to be applied to such corporations. The argument that because existing municipal corporations are affected by that section, other existing

corporations also must be affected, falls, in view of the plain thought of the whole article; because no question of contract rights with the state can arise as to municipal corporations. The position contended for is directly supported by Williamsport Pass. Ry. Co.'s App., 120 Pa. 1, decided by the Supreme Court of Pennsylvania since the decision of the present case.

4. If, however, it be held that a liability for consequential damages was sought to be imposed upon existing private corporations by the constitution of 1874, the attempt was in violation of the Federal constitution. A contract existed, exempting this company from the new burden of such liability. The company was incorporated by act of April 13, 1846, P. L. 312. At that time, and until 1874, there was no general liability in the law of Pennsylvania for consequential damages to property not taken, and the act of incorporation, by not specifically imposing such responsibility upon it, operated as a contract exempting it from the subsequent imposition thereof: Cooley on Const. Lim., *279; Dartmouth College Case, 4 Wheat. 518; Planters Bank v. Sharp, 6 How. 301; Von Hoffman v. Quincy, 4 Wall. 535; McCracken v. Hayward, 2 How. 608; Bronson v. Kinzie, 1 How. 311; Fletcher v. Peck, 6 Cranch 87; Town of Pawlet v. Clark, 9 Cranch 292; Fisk v. Jefferson Police Jury, 116 U. S. 132; Green v. Biddle, 8 Wheat. 1.

5. That a charter not imposing this liability is a contract exempting from its subsequent imposition, was the law in Pennsylvania in 1846 and has been continuously since: Shrunk v. Nav. Co. 14 S. & R. 71; Monongahela Nav. Co. v. Coons, 6 W. & S. 101; s. c. 6 Pa. 379; Henry v. Bridge Co., 8 W. & S. 85; Mifflin v. Railroad Co., 16 Pa. 182; N. Y. etc. R. Co. v. Young, 33 Pa. 175; Watson v. Railroad Co., 37 Pa. 469; Buckwalter v. Bridge Co., 38 Pa. 281; Bald Eagle Boom Co. v. Sanderson, 81* Pa. 402; Hays v. Commonwealth, 82 Pa. 518; Ahl v. Rhoads, 84 Pa. 319; Lewis v. Jeffries, 86 Pa. 340; Long's App., 87 Pa. 114; Penna. R. Co. v. Langdon, 92 Pa. 21; Lycoming Gas & W. Co. v. Moyer, 99 Pa. 615. And, as this was a rule of property in the state, the decisions establishing it will be followed by this court, even though its own judgment might be different from that of the state court: Burgess v. Seligman, 107 U. S. 20; Louisville etc. R. Co. v. Palmer, 109 U. S. 244; Conn. etc. Ins. Co. v. Cushman, 108 U. S. 51.

6. But, whatever view may be taken of the chartered rights of this company as such, the contract by which in 1857 the railroad company purchased from the state the Philadelphia & Columbia railroad, operates to exempt it from the imposition of liability for consequential damages in connection with branches or extensions of that railroad, for two reasons: (1) The act of May 16, 1857, P. L. 519, under which that railroad was sold, provided that the purchaser, if an incorporated company, should hold under the provisions of its charter except as modified by the provisions of the act, and as the charter of the Pennsylvania Railroad Company at that time conferred upon it an immunity from this liability, it is entitled by the contract of purchase to the same immunity respecting the Philadelphia & Columbia railroad; and (2) because, the state not being itself liable for consequential damages, as the owner of said railroad, its grant thereof, with all its rights and privileges therewith connected, passed to the railroad company this exemption.

7. The state court held that, although the railroad company purchased in 1857 the right to build this Filbert street extension, it took the right subject to the state's power to amend, alter or repeal charters, reserved by the act of May 3, 1855, P. L. 423, and the constitutional amendment of 1857; and, therefore, the consequential damage clause in the constitution of 1874 could be made to apply to the corporation defendant. And yet the same court had held in 1870 that, notwithstanding the act of 1855 and the amendment of 1857, the state legislature had no control whatever over the charter of this company: Commonwealth v. Penna. Canal Co., 66 Pa. 41; and vast investments have been made in reliance upon this view as a rule of property. The reserved right of the state was only to alter charters, and the completed act of incorporation in this case was prior to the act of 1855. The act of May 16, 1857, was not, as the state court held, a grant of a new charter, but simply a part of a contract of sale. To alter or impair it, the state has no power: Railroad Co. v. Maine, 96 U. S. 510; Sinking Fund Cases, 99 U. S. 700; Davis v. Gray, 16 Wall. 203; Hall v. Wisconsin, 103 U. S. 5.

8. The constitutional amendment of 1857 has no bearing on the state's right to alter this contract, as it was not adopted

until after the contract had become complete. We have, then, only the legislative reservation, in 1855, of the right to alter subsequent charters, and what one legislature has reserved a subsequent legislature can grant away: New Jersey v. Yard, 95 U. S. 104. The grant made by the contract of 1857 said, almost in specific words, that the rights granted could not be revoked or altered except for cause and after judicial decree, and thereby precluded any future legislative control: State v. Commissioners, 37 N. J. L. 240. Again, even if the act of 1855 does apply, it provides that no injustice shall be done to the corporators by any revocation or alteration of charters. So, too, § 15 of the act of 1857 provides that no injury shall be done to the corporators by any annulment of the rights which the state then granted. How can it be said that no injustice or injury is done to the corporators of this company, by the withdrawal of an exemption that was a part of the consideration for which the company paid $7,500,000?

9. The contract rights of the railroad company were not lost by the acceptance of subsequent legislation. This effect cannot be produced unless the specific acts accepted provided, as the condition of their acceptance, that the chartered rights of the company should be subject to legislative interference: Morawetz on Corp., § 1109. Any other rule would make an act pretending to convey a benefit, upon express terms, a mere trap. The case of Monongahela Nav. Co. v. Coon, 6 Pa. 379, upon which the state court rested its decision, merely affirmed that an express grant, in consideration of an express relinquishment of corporate immunities, established the legislature's control over the corporation. The utmost effect that can be given to the amendment of 1857 would be to make rights subsequently conferred by charter, subject to withdrawal or alteration. The effect of the act of 1855 has been already considered.

10. Moreover, even if the rights purchased from the state in 1857 were held subject to the reservation in the act of 1855 and the amendment of 1857, of a right in the legislature to alter or repeal charters, the new constitution of 1874 cannot affect these rights, because its adoption was not a valid exercise of the power thus reserved to the legislature: New Jersey v. Yard, 95 U. S. 104; Commonwealth v. Randall, 10 Phila. 451; Douglass v. Chosen Freeholders, 38 N. J. L. 214; Woodbury

v. Berry, 18 Ohio 456; White v. Railroad Co., 14 Barb. 559; Cooley on Const. Lim., *87, *120; Barto v. Himrod, 8 N. Y. 483 (59 Am. Dec. 506); Lock's App., 72 Pa. 491; Brown v. Fleishner, 4 Ore. 132; Lammert v. Lidwell, 62 Mo. 188 (21 Am. Rep. 411); Tomlinson v. Jessup, 15 Wall. 454; Spring V. Water Works v. Schottler, 110 U. S. 347.   Only the legislature, or general assembly, was capable of annulling, repealing or altering charters, under the reservation of power above mentioned, and that body has never acted on the subject.

11. The state court having decided that the authority of the railroad company to build its extension rests upon acts of assembly passed prior to 1874, and having held the position taken by the defendant in error that the company's authority was derived from the act of June 9, 1874, P. L. 282, and an ordinance passed under this act by the city council, and that it had, therefore, constructively subjected itself to the constitution of 1874, to be untenable, under the ruling in McAboy's App., 107 Pa. 548, this part of the case is res judicata, and it is unnecessary for us to show, as we could very well do, that the act of 1874 has no bearing on the case, but relates merely to changes in roads already built; and that the attitude of the corporation toward the city ordinance was that of courteous acquiescence in its suggestions, without the recognition of any right in the city to confer or withhold the franchise exercised. The submission of the plans to the council was merely with the view that their approval might afterwards be available as evidence of a reasonable and proper exercise of the company's franchises, in accordance with the cases of Pittsburgh v. Railroad Co., 48 Pa. 355, and Cleveland etc. R. Co. v. Speer, 56 Pa. 325.

12. The immunity of the company from liability for consequential damages was not lost by delay in the exercise of the right to build this extension.   A corporation is not bound to exercise all its rights and franchises at once, or lose those not immediately exercised: Philadelphia etc. R. Co. v. Williams, 54 Pa. 103; Black v. Railroad Co., 58 Pa. 249; Peoples Pass. Ry. Co. v. Baldwin, 14 Phila. 231.   If the right to make the extension still existed, it must exist with the same immunities which made it valuable when purchased from the state, and to add to the price paid for it the burden of paying consequential

damages, would be the impairment of a vested right: Richardson v. Akin, 89 Ill. 138; Louisville v. Wible, 84 Ky. 290; Los Angeles v. Water Co., 61 Cal. 65; Commonwealth v. Proprietors etc., 2 Gray 239. This right vested under a contract which, though in a certain sense an implied one, had the force of an express contract in the same sense as the executed contract of sale considered in Fletcher v. Peck, 6 Cranch 87. The contract contained in it the obligation not to withdraw the grant or to abstract from it in any essential particular.

13. Such imposition cannot be sustained as an exercise of police power, for it has nothing to do with the health, morals, comfort or safety of the people; nor as an exercise of the sovereign power of the state to legislate, for the contract, made by the state as a private party, excepted from the legislative powers of the state the right to affect the value of its undertaking. The fallacy of the position that the constitutional provision merely provided a remedy for a pre-existing right, is shown in the opinion of the state court. There is no analogy between this case and cases in which rights of action for a negligent killing have been given by statute. No person or corporation can have a contract or other right to act negligently, and the legislature has the right at all times to impose on corporations damages or penalties for negligence. The right of the state to make such a contract as was entered into here rests on even stronger grounds than contracts conferring exemption from taxation. Taxation is a function eminently necessary to the life and growth of the state, and yet it has been held, that, for a proper consideration, the state may contract to exempt from it. Eminent domain is not a vital prerogative, as is taxation, for without the former the state could well exist, while it could not if without the taxing power.

*Mr. David T. Watson* and *Mr. M. Hampton Todd* (with them *Mr. George W. Biddle*), for the defendant in error:

1. There is no contract in the charter of the Pennsylvania Railroad Company that it shall be exempt from liability to make just compensation for property injured and destroyed by the construction or enlargement of its works, highways or improvements. The defendant company does not claim that its charter contains any such express contract, but contends simply

that, because the Supreme Court of the state held, at the time the charter was granted, that a corporation invested with the right of eminent domain was liable only where there had been an actual seizure of private property, this ruling was by implication a part of its charter.

2. To the position thus taken we reply, in the first place, that a corporation takes its charter subject to the general law of the state, and therefore subject to such changes as might be made in such law: In re Provident Institution for Savings, 9 Cush. 604; Newton v. Commissioner, 100 U. S. 548; Morawetz on Corp., §§ 1062, 1065, 1067; Hare's Am. Const. Law, 609; Cooley's Const. Lim., *574; Nelson v. Railroad Co., 26 Vt. 718 (62 Am. Dec. 614); Branin v. Railroad Co., 31 V·t. 222; Thorpe v. Railroad Co., 27 Vt. 140 (62 Am. Dec. 625); Frankford etc. Ry. Co. v. Philadelphia, 58 Pa. 119; Baltimore etc. R. Co. v. Goodwin, 10 How. 395. Police power cannot be abridged even by legislation: Beer Co. v. Massachusetts, 87 U. S. 32. A state may at any time provide new remedies to effectuate justice: Railroad Co. v. Hecht, 95 U. S. 170.

3. Suppose the Supreme Court of Pennsylvania were to overrule its prior decisions, and adopt the doctrine laid down in the dissenting opinion of Mr. Justice HUSTON, in Monongahela Nav. Co. v. Coons, 6 W. & S. 115, and by this court in Pumpelly v. Green Bay etc. Can. Co., 13 Wall. 166. To hold that such a correction of the general law would impair the obligation of a contract would be absurd. Why, then, could not the same result be accomplished by legislation, organic or otherwise? Such a law is simply giving a remedy for an unredressed wrong. The right to compensation is a correlative of the right to take private property: Hare's Am. Const. Law, 347; Wilkinson v. Leland, 2 Pet. 627. If, therefore, a statute may give a remedy for injuries resulting in death, where there is no basis of common law liability, against a corporation previously exempt therefrom, (and this has uniformly been held constitutional: Cooley's Const. Lim., *581: B. etc. R. Co. v. State, 32 N. H. 215; S. W. R. Co. v. Paulk, 24 Ga. 363), a fortiori may a remedy be given for property injured: Duncan v. Railroad Co., 94 Pa. 435; Hare's Am. Const. Law, 421; Mo. Pac. R. Co. v. Mackey, 127 U. S. 205; Georgia etc. R. Co. v. Smith, 128 Ga. 174; Patent v. Railroad Co., 14 W. N. 545; s. c. 17 W. N. 198.

4. Moreover, exemption from future general legislation can never be implied; there must be an express contract: Newton v. Commissioners, 100 U. S. 548; Hare's Am. Const. Law, 661, 663. That the constitutional inhibition against impairing the obligation of contracts applies to implied contracts, as ruled in Fisk v. Jefferson Police Jury, cited by the defendant company, no one doubts; but this court has said, over and over again, that there can be no implied restriction on a state's control of the essential attributes of sovereignty. The privilege of taking private property for public use is, however, such an element of sovereignty that it cannot be granted at all in such a way as to preclude future legislatures from controlling its subsequent exercise: Cooley Const. Lim., 524, 621; Hare's Am. Const. Law, 331, 332; People v. Brooklyn, 4 Comst. 419; Mott v. Penna. R. Co., 30 Pa. 9; Del. Railroad Tax Case, 18 Wall. 206.

5. So far as the Philadelphia & Columbia railroad is concerned, a new charter, to operate and use the same under the powers of its original charter, was granted the plaintiff in error by the act of May 16, 1857, P. L. 519. At that time the act of May 3, 1855, P. L. 423, since supplied by the constitutional amendment of October, 1857, was in force. And since the adoption of this amendment, the company has accepted several acts amending its charter, notably that of April 4, 1868, P. L. 59, held to be a part of its charter in Penna. R. Co. v. Langdon, 92 Pa. 21. It was therefore competent for the legislature, and a fortiori for the constitution, to impose upon this company liability for consequential damages, provided the doing so worked no injustice to the corporators: Railway Co. v. Philadelphia, 101 U. S. 528; Tomlinson v. Jessup, 15 Wall. 454; Railroad Co. v. Georgia, 98 U. S. 359.

6. Imposing liability for consequential damages upon a corporation whose charter is subject to the right to alter, revoke or annul the same, does no injustice to the incorporators: Monongahela Nav. Co. v. Coons, 6 Pa. 379. This decision is conclusive. It was the adjudicated law of Pennsylvania at the time of the purchase made by the company from the state, and not only the acts of 1857 and 1868, but numerous other acts approved since 1857, were accepted with knowledge that it was the law. The position of the plaintiff in error that the act of 1855 was repealed pro hac vice by § 15, act of May 16, 1857,

cannot be sustained so far as the authority to alter charters is concerned, but, if it could, this would not help the case, in view of the acceptance of the act of 1868. New Jersey v. Yard, 96 U. S. 104, relied on by plaintiff in error, was decided upon an act differing in its language from the act of 1855.

7. Whence comes the authority under which this elevated road was built on Filbert street? Not from the grant of power to extend the Philadelphia & Columbia road to the Delaware river. The company constructed a Delaware extension years ago: Act of March 12, 1873, P. L. 253. But, even if this power were still available, a road terminating at Fifteenth and Market streets, a mile west of the Delaware, cannot be said to be an extension to that river: Stewart's App., 56 Pa. 413; Cohen v. Williamson, 1 McN. & G. 481; Logan v. Earl of Courtown, Bea. 22; People v. Railroad Co., 24 N. Y. 267; Commonwealth v. Railroad Co., 27 Pa. 339. Nor could it be built under the company's branching power, because that power under the original charter only exists between Harrisburg and Pittsburgh, and as to the Philadelphia & Columbia railroad, it was not conferred by express words or necessary implication. The branching franchise is severable, and, not being necessary to the ownership of the Philadelphia & Columbia railroad, was not extended thereto by the act of 1857.

8. There is legislative authority, however, for the building of this railroad, viz.: the act of June 9, 1874, P. L. 282, in connection with the ordinance of the city councils enacted October 13, 1879. In no other way than by this ordinance can the right to occupy Filbert street be supported: Commonwealth v. Railroad Co., 27 Pa. 339; Pittsburgh Junc. R. Co.'s App., 122 Pa. 511; Penna. R. Co.'s App., 93 Pa. 150; Penna. R. Co.'s App., 115 Pa. 527; Dillon on Mun. Corp., 560; Springfield v. Railroad Co., 4 Cush. 63; Boston etc. R. Co.'s Case, 53 N. Y. 574; Cake v. Railroad Co., 87 Pa. 307; Cemetery Co. v. New Haven, 43 Conn. 234; Bridge Co. v. Bridge Co., 7 N. H. 351. And this is so, under whatever act the power to build the road was conferred. The company, having thus derived a benefit from the ordinance, passed under the act of 1874, has thereby accepted the constitution of 1874, and is bound by its provisions: Constitution, § 2, article XVI.

OPINION, MR. JUSTICE BLATCHFORD:

This is an action on the case brought in June, 1881, by George R. Duncan against the Pennsylvania Railroad Company, a Pennsylvania corporation, in the Court of Common Pleas No. 2, for the county of Philadelphia, Pennsylvania. The plaintiff sued as the owner in fee of a piece of land, with the buildings, wharves, and improvements thereon, situated at the northwest corner of Twenty-third street and Filbert street in the city of Philadelphia, and extending 230 feet and 11 inches along the west side of Twenty-third street, and 426 feet from that corner along the north side of Filbert street, to low-water mark on the Schuylkill river.

The declaration alleged that the defendant had constructed along and upon Filbert street, and in front of the premises of the plaintiff, an elevated railroad, placed on iron and stone pillars set at the curb-lines in Filbert street, at intervals longitudinally of 50 feet, more or less, and at an elevation of at least 20 feet above the established grade of Filbert street, and had constructed an abutment for the sustaining of a bridge superstructure across the Schuylkill river, on the eastern side of said river, and in the middle of Filbert street, in front of the premises of the plaintiff, and had constructed, opposite Filbert street in the channel of the river, two piers to further support the bridge superstructure, the bridge and the elevated railroad making a continuous line of railway, operated by the defendant, to transport freight and passengers in cars drawn by steam locomotives; that Twenty-third street, and Filbert street, at the place in question, were public highways of the city of Philadelphia; that the construction by the defendant of the elevated railroad, and of the abutment and pier for the support of the bridge superstructure, and the operation and use of the elevated railroad to transport freight and passengers in cars drawn by steam locomotives, and the noise, burning cinders, smoke, dust, and dirt incident to the use of such railroad, had injured the plaintiff in the enjoyment of his premises, and had rendered the same incommodious and of little or no value to him, and had deprived him of the free use of Filbert street as a highway and of free access to and from the wharves on the river front of his property by the river as well as by Filbert street, and had greatly depreciated the value of the wharves;

and that the injuries were committed on the 1st of June, 1881, and at all times since.

The elevated railroad in question was built by the defendant in 1880 and 1881, and was opened for freight in April, 1881, and for passengers in December, 1881. It is known as the Filbert street extension, and crosses the Schuylkill river a short distance above Market street, and ends at Broad street. From Twenty-first street west to the river the tracks were laid upon a structure of wooden and iron beams directly over the cartway of the street, and were sustained by iron pillars some 18 inches square, resting upon the footway inside of the curbline. This was the case along the whole length of the south side of the plaintiff's property, the structure being some 40 feet high, and the railing or guard along the track coming within one or two feet of the wall of the plaintiff's building. None of the plaintiff's property was actually taken by the defendant, but the action was brought for the consequential damages caused by the construction of the railroad and its use and operation.

The defendant set up, among other defences, that it had the right to do what it had done, without liability to the plaintiff, by virtue of its charter, contained in an act passed by the legislature of Pennsylvania, April 13, 1846, P. L. 312, and by virtue of a further act of that legislature, passed May 16, 1857, P. L. 519.

The case was tried before the court and a jury, and resulted in a verdict for the plaintiff for $20,000, for which amount, with costs, he had judgment. On a writ of error, the judgment was affirmed by the Supreme Court of Pennsylvania: Penna. R. Co. v. Duncan, 111 Pa. 352, and the defendant has brought the case to this court by a writ of error to the court of first instance, to which the record had been remitted. Duncan having died, his administrator has been substituted as defendant in error.

The federal question involved is whether the acts of 1846 and 1857 constituted a contract between the state and the defendant, relieving the defendant from liability in this suit, and whether such contract was of such a character that its obligation could not be impaired by subsequent legislation by the state.

It is first necessary to see what are the provisions of the statutes on which the defendant relies.

The 11th section of the act of 1846 gave authority to the defendant to construct a railroad from Harrisburg to Pittsburgh, with a branch to Erie, and gave to it the right to enter upon and occupy all land necessary for the purpose, and to "take" the necessary materials from any land adjoining or in the neighborhood of the railroad so to be constructed: "Provided, that such compensation shall be made, secured, or tendered to the owner or owners of any such lands or materials as shall be agreed upon between the parties, or in such manner as is hereafter mentioned: Provided further, that the timber used in the construction or repair of said railroad shall be obtained from the owners thereof only by agreement or purchase." The 12th section provided for the fixing of such compensation, when not agreed upon, through a petition to the Court of Quarter Sessions of the proper county. The 17th section contained this provision: "And it shall be lawful for the said company, in the manner and subject to the conditions and provisions hereinbefore provided, in relation to the main line of their railroad by this act authorized to be made, to make such lateral railroads or branches, leading from the main line of their said railroad, to such convenient place or points, in either of the counties into or through which the said main line of their road may pass, as the president and directors may deem advantageous, and suited to promote the convenience of the inhabitants thereof, and the interests of said company."

By the 4th section of the act of March 27, 1848, P. L. 274, passed as a supplement to the act of 1846, provision was made for ascertaining, through the action of the Court of Common Pleas of the proper county, the damages sustained by the owner of land or materials "taken" by the defendant, in case such compensation could not be agreed upon. Section 5 of that act provided as follows: "That if said railroad company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith, at their own proper expense, on the most favorable location, and in as perfect a manner as the original road: Provided, that the damages incurred in changing the location of any road authorized by this section shall be ascer-

tained and paid by said company in the same manner as is provided for in regard to the location and construction of their own road."

By section 1 of an act passed April 12, 1851, P. L. 518, it was provided that the 5th section of the act of 1848 should be so construed as to include the streets, lanes, and alleys in any town, borough, or city through which the road passed.

By the act of May 16, 1857, before referred to, provision was made for the sale at public auction of the whole main line of the public works of the state of Pennsylvania, which included the Philadelphia & Columbia railroad. The act provided, among other things (§ 3), that it should be lawful for any railroad company then incorporated by the state to purchase such main line for a sum not less than $7,500,000; and that if the Pennsylvania Railroad Company should become the purchaser at such public sale or by assignment (which assignment the act provided for), it should pay in addition to the purchase money of not less than $7,500,000 the further sum of $1,500,000, and should, in consideration thereof, have forever certain exemptions from taxation. This provision in regard to taxation was held unconstitutional by the Supreme Court of Pennsylvania, in Mott v. Penna. R. Co., 30 Pa. 9, a decision made before the sale took place. The third section of the act further provided that it should be lawful for the purchaser " to straighten and improve the said Philadelphia & Columbia railroad, and to extend the same to the Delaware river, in the city of Philadelphia." The 11th section of the act provided as follows: " That should any company already incorporated by this commonwealth become the purchaser of said main line, they shall possess, hold, and use the same under the provisions of their act of incorporation and any supplements thereto, modified, however, so as to embrace all the privileges, restrictions, and conditions granted by this act in addition thereto; and all provisions in said original act and any supplements inconsistent with the privileges herein granted shall be and the same are hereby repealed."

At a meeting of the stockholders of the defendant, held on the 20th of July, 1857, for the purpose of accepting or rejecting the provisions of the act of 1857, and of considering such action as the directors of the defendant had taken in pursuance

Opinion of the Court.

of that act, subject to the approval of the stockholders, it was resolved, that the stockholders of the defendant accepted the provisions of the act, so far as the same in any way related to or affected the defendant, and ratified and approved of such action as had been taken by the board of directors of the defendant, in purchasing the said main line of the public works, pursuant to the provisions of that act, for the sum of $7,500,000. The sale at public auction had taken place on the 25th of June, 1857, and the property had been purchased by the defendant for the sum above mentioned. On the 31st of July, 1857, the state conveyed by deed poll to the defendant the property so purchased, described as in the margin.*

By the constitution of Pennsylvania of 1873, which took effect January 1, 1874, it was provided as follows, by § 8 of article XVI.: "Municipal and other corporations and individuals

---

*"The whole main line of the public works between the said cities of Philadelphia and Pittsburgh, in the state of Pennsylvania, consisting of the Philadelphia & Columbia railroad, the Allegheny Portage railroad, including the new road to avoid the inclined planes, with the necessary and convenient width for the proper use of said railroads, the Eastern Division of the Pennsylvania Canal, from Columbia to the junction, the Juniata Division of the Pennsylvania Canal, from the junction to the eastern terminus of the Allegheny Portage railroad, and the Western Division of the Pennsylvania Canal, from the western terminus of the Allegheny Portage railroad to Pittsburgh, and including also the right, title, and interest of the commonwealth in the bridge over the Susquehanna, at Duncan's Island, together with the same interest in the surplus water power of said canals, with the right to purchase and hold such lands as may be necessary to make the same available; and all the reservoirs, machinery, locomotives, cars, trucks, stationary engines, work-shops, tools, water stations, toll-houses, offices, stock, and materials whatsoever and wheresoever thereunto belonging or held for the use of the same, and together with all the right, title, interest, claim, and demands of the commonwealth of Pennsylvania to all property, real, personal, and mixed, belonging unto or used in connection with the same by the said commonwealth, and together with all and singular other the buildings, improvements, powers, authorities, ways, means, and remedies, estates and interests, rights, members, incidents, liberties, privileges, easements, franchises, emoluments, reversions, remainders, rents, issues, profits, hereditaments, and appurtenances of what name, nature, or kind soever thereto belonging or in anywise appertaining, which by force and virtue of the said recited act of assembly and the provisions thereof were meant and intended, and of right to be hereby assigned and transferred therewith."

invested with the privilege of taking private property for pub-
lic use shall make just compensation for property taken, in-
jured, or destroyed, by the construction or enlargement of their
works, highways, or improvements, which compensation shall
be paid or secured before such taking, injury, or destruction."

With these premises, we are prepared to consider the views
taken of this case by the Supreme Court of Pennsylvania.
That court gave its assent to the principle that the charter of
the defendant was inviolable. It further stated that the fra-
mers of the constitution of 1874 did not intend to repeal any
of the provisions of that charter. It held that § 8 of article
XVI. of that constitution included not only then existing
municipal corporations, but also then existing "other corpora-
tions." It further held, that the defendant did not derive its
authority to build the branch road in question, from the west-
ern side of the Schuylkill river through Filbert street, from
the act of 1846, because that act embraced only the power to
build and operate a road from Harrisburg to Pittsburgh; but
that it derived such authority from the act of May, 1857, in
the 11th section thereof, before quoted; and that the conven-
tion which made the constitution of 1874 had the power to
subject the defendant's exercise of the right of eminent domain
to the provision that it should make just compensation, not
only for the property which it might choose to "take," in the
strict sense of that word, but also for such as it might injure
or destroy.

We think these views are sound. There was no such con-
tract between the state and the defendant, prior to the consti-
tution of 1874, as prevented the subjection of the defendant
by that constitution to the liability for consequential damages
arising from its construction of this elevated road in 1880 and
1881. Prior to the constitution of 1874, and under the consti-
tutional provisions existing in Pennsylvania before that time,
the Supreme Court of that state had uniformly held that a
corporation with such provisions in its charter as those con-
tained in the charter of the defendant, was liable, in exercising
the right of eminent domain, to compensate only for property
actually taken, and not for a depreciation of adjacent property.
The 8th section of article XVI. of the constitution of 1874
was adopted in view of those decisions, and for the purpose of

remedying the injury to individual citizens caused by the non-liability of corporations for such consequential damages. Although it may have been the law in respect to the defendant, prior to the constitution of 1874, that under its charter and the statutes in regard to it, it was not liable for such consequential damages, yet there was no contract in that charter, or in any statute in regard to the defendant, prior to the constitution of 1874, that it should always be exempt from such liability, or that the state, by a new constitutional provision, or the legislature, should not have power to impose such liability upon it, in cases which should arise after the exercise of such power. But the defendant took its original charter subject to the general law of the state, and to such changes as might be made in such general law, and subject to future constitutional provisions or future general legislation, since there was no prior contract with the defendant, exempting it from liability to such future general legislation, in respect of the subject matter involved.

This principle is well set forth in the opinion of the justices of the Supreme Judicial Court of Massachusetts, given by them in answer to a question submitted to them by the senate of that Commonwealth in, In re Provident Institution for Savings, 9 Cush. 604. See, also, Nelson v. Vt. & Canada R. Co., 62 Vt. 717; Thorpe v. Rutland & B. R. Co., 27 Vt. 140; Branin v. Conn. & Passumpsic R. R. Co., 31 Vt. 214; Frankford Ry. Co. v. The City, 58 Pa. 119; Balt. & Susq. R. Co. v. Nesbit, 10 How. 395, 399, 400; Pumpelly v. Green Bay etc. Can. Co., 13 Wall. 166; Railroad Co. v. Hecht, 95 U. S. 168, 170; Beer Co. v. Massachusetts, 97 U. S. 25, 32, 33; Newton v. Commissioners, 100 U. S. 548, 557; Missouri Pac. R. Co. v. Humes, 115 U. S. 512; 1 Hare's Am. Const. Law, 609, 610; 2 Morawetz on Private Corporations, 2d ed., §§ 1062, 1065, 1067; Cooley's Const. Limit., 4th ed., *574, 716.

The provision contained in the constitution of 1874 was merely a restraint upon the future exercise by the defendant of the right of eminent domain imparted to it by the state. By its terms, it imposes a restraint only upon corporations and individuals invested with the privilege of taking private property for public use, and extends the right to compensation, previously existing, for property taken, to compensation for

property injured or destroyed by the construction or enlargement of works, highways, or improvements, made or constructed by such corporations or individuals. Such provision is eminently just, and is intended for the protection of the citizen, the value of whose property may be as effectually destroyed as if it were in fact taken and occupied. The imposition of such a liability is of the same purport as the imposition of a liability for damages for injuries causing death, which result from negligence, upon corporations which had not been previously subjected by their charters to such liability : Boston, Concord & M. R. Co. v. The State, 32 N. H. 215; Southwestern Railroad Co. v. Paulk, 24 Ga. 356 ; Duncan v. Penna. R. Co., 94 Pa. 435; Georgia R. & Banking Co. v. Smith, 128 U. S. 174; Cooley's Const. Limit., 4th ed., *581, 724 ; 1 Hare's Am. Const. Law, 421.

Nor will the exemption claimed from future general legislation, either by a constitutional provision or by an act of the legislature, be admitted to exist, unless it is expressly given, or unless it follows by an implication equally clear with express words. In the present case, the statutory provisions existing prior to the constitution of 1874, in favor of the defendant, cannot be properly interpreted so as to hold that the state parted with its prerogative of imposing the liability in question, in regard to future transactions : Providence Bank v. Billings, 4 Pet. 514 ; Charles River Bridge v. Warren Bridge, 11 Pet. 420 ; Christ Church v. Philadelphia, 24 How. 300 ; Gilman v. City of Sheboygan, 2 Black 510 ; Tucker v. Ferguson, 22 Wall. 527; Fertilizing Co. v. Hyde Park, 97 U. S. 659 ; Newton v. Commissioners, 100 U. S. 548, 561 ; 2 Hare's Am. Const. Law, 661, 663, 664.

Judgment affirmed.